**Electronically Filed
Intermediate Court of Appeals
30439
30-AUG-2013
07:47 AM**

NO. 30439

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


STATE OF HAWAI'I, Plaintiff-Appellee,
v.
EDWIN GUNNER SCHULL, JR., Defendant-Appellant


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1P109-10730)


MEMORANDUM OPINION
(By: Nakamura, Chief Judge, and Fujise and Ginoza, JJ.)


Plaintiff-Appellee State of Hawai'i (State) charged Defendant-Appellant Edwin Gunner Schull, Jr. (Schull) with permitting a dog, of which he was an owner, to become a stray, in violation of Revised Ordinances of Honolulu (ROH) § 7-4.2 (1990 & Supp. No. 19, 7-2011).[1] The charge also alleged that Schull was subject to sentencing as a second-time offender, pursuant to ROH

---

[1] ROH § 7-4.2 provides:

Sec. 7-4.2 **Strays prohibited.**

It shall be unlawful for the owner of any dog, whether such dog is licensed or not, to permit such dog to become a stray.

§ 7-4.9 (1990 & Supp. No. 19, 7-2011, Supp. No. 17, 6-2010).[2/] After a bench trial, the District Court of the First Circuit (District Court)[3/] found that Schull had violated ROH § 7-4.2, which the District Court found was Schull's "second offense," and fined him $100. Schull appeals from the Notice of Entry of Judgment and/or Order (Judgment) filed on February 24, 2010, in the District Court.

On appeal, Schull argues that: (1) the District Court erred in ruling that the charge was sufficient; (2) the District Court erred in construing the charged violation of ROH § 7-4.2 as not requiring proof of a mens rea or any action by the defendant to permit a dog to become a stray and in denying his motion for judgment of acquittal on that basis; (3) the District Court erred in admitting evidence of prior incidents concerning the two dogs involved in this case; and (4) ROH § 7-4.2, as construed by the District Court, is unconstitutionally overbroad and vague.

The decision in this appeal turns on the proof required to establish the violation of ROH § 7-4.2 with which Schull was charged. Schull was charged with violating ROH § 7-4.2 and being

---

[2/] ROH § 7-4.9 provides, in relevant part:

**Sec. 7-4.9 Violation -- Penalty.**

(a)   The owner of a dog which has become a stray or any other person convicted of a violation of this article shall be punished for the offense as follows:

    (1)   A fine of $50 if the offense did not occur within two years of the occurrence of a previous offense under this article;

    (2)   A fine of $100 if the offense occurred within two years of the occurrence of one previous offense under this article; or

    (3)   A fine of not less than $500 nor more than $1,000, imprisonment not exceeding 30 days, or both, if the offense occurred within two years of the occurrence of two or more previous offenses under this article or if the person convicted has a previous conviction under Section 7-7.2 involving the same dog.

[3/]   The Honorable T. David Woo, Jr. presided.

2

subject to punishment as a second-time offender pursuant to ROH § 7-4.9(a)(2). We conclude that the charged violation of ROH § 7-4.2 does not require proof of a mens rea. It does, however, for the conduct element of the offense, require proof that the dog's owner did permit the dog to become a stray. Therefore, the mere fact that a dog owned by the defendant became a stray is not sufficient; additional evidence showing that the defendant dog-owner permitted the dog to become a stray is required.

Based on our review of the record, we conclude that the District Court decided this case based on the erroneous belief that proof that Schull was the owner of the dogs and that the dogs had become strays was sufficient to establish the charged violation of ROH § 7-4.2, without requiring proof that Schull had permitted the dogs to become strays. Because the District Court decided the case based on an erroneous view of the law, the District Court's decision that Schull violated ROH § 7-4.2 as charged cannot stand. We further conclude, however, that when viewed in the light most favorable to the State, there was sufficient evidence to prove that Schull committed the charged violation of ROH § 7-4.2, such that a new trial is warranted. Accordingly, we vacate the Judgment, and we remand the case for a new trial.

With respect to Schull's other points of error, we conclude that the charge was sufficient; that the District Court did not err in admitting evidence of prior incidents involving the two dogs; and that under our construction of ROH § 7-4.2, it is not unconstitutionally overbroad or vague.

BACKGROUND

I.

The charge in the present case stemmed from an incident that occurred on August 13, 2009. Schull's neighbor saw two dogs, which the neighbor identified as belonging to Schull, running loose beyond Schull's property. Schull had previously been found to have violated ROH 7-4.2, as reflected in a judgment entered on December 12, 2008.

3

Schull was orally charged in the present case as follows:

> [O]n or about August 13, 2009, on the island of Oahu, state of Hawaii, Gunner Schull -- Edwin Gunner Schull, Jr., also known as E. Gunner Schull, an owner of any dog, whether such dog was licensed or not, did permit such dog to become astray [sic], a violation -- in violation of Section 7-4.2 of the [ROH]. [Schull] is subject to sentencing under Section 7-4.9 paren A paren 2 of the [ROH] where [Schull] committed the instant offense within two years of the occurrence of a previous offense under Section 7, Article 4 of the [ROH].

Schull moved to dismiss the charge on the ground that it was insufficient on its face in that it failed to explain "what the defendant did and what he has to do in order to defend himself." The District Court denied the motion to dismiss.

Prior to trial, the State filed a notice of its intent to use evidence of two prior incidents concerning the same two dogs involved in this case. The State proffered that one of the incidents took place between January 1 and February 28, 2009, and involved Schull exiting his house with the two dogs that were not on leashes. The other incident took place in July 2009 and involved the two dogs running loose on the street with Schull and a female 30 to 40 feet behind the dogs. The State offered the evidence pursuant to Hawai'i Rules of Evidence (HRE) Rule 404(b) (Supp. 2012)[4] to prove identity and that Schull was the owner and keeper of the dogs.

Schull objected to the State's introduction of evidence regarding the prior incidents. Schull stated that he was prepared to admit that "Charlie and Buster," the dogs in question, "are kept in the household of the defendant and that on

---

[4] HRE Rule 404(b) provides, in relevant part:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible where such evidence is probative of another fact that is of consequence to the determination of the action, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, modus operandi, or absence of mistake or accident.

4

August 13 Charlie and Buster did escape and were on a public street." Schull argued that his offer to stipulate obviated the necessity for evidence of the prior incidents "with respect to identifying the dogs or . . . the circumstances involved." In response, the District Court noted that HRE Rule 404(b) also permits the introduction of evidence to prove lack of mistake. The District Court also noted that the State had not accepted Schull's offer to stipulate and overruled Schull's objection to the evidence of the prior incidents.

II.

A.

The State adduced the following evidence at trial:

Tom Ehlke (Ehlke), Schull's neighbor, lived three houses away from Schull. Ehlke testified that on August 13, 2009, he was in his garage when he saw two dogs belonging to Schull running up his street unleashed and without anyone accompanying them. The dogs veered onto the property of Ehlke's neighbor, stopped in another neighbor's driveway, then continued down the street. Ehlke and his wife walked to the Schull's driveway. About fifteen or twenty minutes later, Ehlke saw the dogs "hovering between -- on the public road and sometimes on the Schull property without leashes."

Ehlke testified that he saw Schull waiting at the curb of the public street for the dogs to come back to Schull's house:

> Q. You testified that on August 13, early in the -- well in the late afternoon that you saw Mr. Schull at the back door of his house?
>
> A. Yes also on the street.
>
> Q. And you saw him on the street?
>
> A. Um-hmm.
>
> Q. And the dogs were where when you -- when you saw them?
>
> A. The dogs were on the public street . . . .
>
> Q. And what did Mr. Schull do?

> A. He was waiting there at the curb for the dogs to more or less come back to the house.

Ehlke stated that the dogs eventually entered the Schull property by way of the back door.

Ehlke also testified about a prior incident involving the two dogs. Ehlke stated that on one occasion between January 1 and February 28, 2009, he saw the two dogs emerge from Schull's property onto the public street without leashes, with Schull following the dogs out.

Erica Luecke (Luecke), Ehlke's wife, testified to another prior incident involving the two dogs. According to Luecke, on one occasion in July 2009, she saw the two dogs, without leashes, on her street with Schull and a woman walking about ten meters behind. Luecke described the dogs as "jumping along, running, [and] happy." These were the same dogs that she photographed on August 13, 2009.

During the trial, the State offered a certified copy of District Court records regarding Schull's prior violation of ROH § 7-4.2. The records reflected that on December 16, 2008, after a trial, Schull was found "guilty" as charged of violating ROH 7-4.2 and fined $50. The District Court took "judicial notice" of these records.

B.

After the State rested, Schull moved for judgment of acquittal, which the District Court denied. Schull then testified in his own defense.

Schull testified that he has had the dogs, Buster and Charlie, for eight years. Schull stated that once he learned of the dogs' propensity to run from his property, he made efforts to contain the dogs in his yard. These efforts included spending significant amounts of money to build a chain link fence, which he retrofitted with an electric fence system, and a brick wall, to install a gate that would close automatically, to pour concrete along the perimeters of all fences, and to rebuild and reinforce along the edges of his house. He testified that he had

done "everything I can to keep them in" and that anytime the dogs escaped, it had been without his knowledge or permission.

According to Schull, he was at work on the date of the charged incident when he received a call from his wife. His wife reported that his son had taken the garbage out and had inadvertently left a gate open, which apparently resulted in the dogs getting loose. Schull testified that he immediately left his office and went home and "by the time I had come home, the dogs were back on the property." Schull stated that his son, who had been home on summer break from school on the mainland, was well aware that he was to keep the dogs on the property at all costs, but his son made a mistake.

C.

At the conclusion of the evidence, the District Court rendered its verdict that Schull had committed the charged violation, finding as follows:

> This is a -- this is a violation. And, uh -- and akin to infraction. And basically the court finds that there is no specific mens rea required for this offense. The court finds that the State has proven beyond a reasonable doubt that these dogs were the property of the defendant [Schull], and these dogs were loose, um, off leash on a public street. And the court therefore finds [Schull] guilty as charged of this offense.

DISCUSSION

I.

Schull argues that the charge was insufficient because it used the terms "owner" and "stray" that have statutory definitions that do not mean what a person of common understanding would conclude. We disagree.

The Hawai'i Supreme Court has provided the following guidelines for evaluating the sufficiency of a charge:

> The sufficiency of the charging instrument is measured, inter alia, by whether it contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he or she must be prepared to meet. In other words, the . . . charge must be worded in a manner such that the nature and cause of the accusation could be understood by a person of common understanding. The relevant inquiry, therefore, is whether or not the charge

> provided the accused with fair notice of the essential elements.

State v. Mita, 124 Hawai'i 385, 390, 245 P.3d 458, 463 (2010) (internal quotation marks, brackets, and citations omitted). "Whether a charge sets forth all the essential elements of a charged offense is a question of law, which we review under the de novo, or right/wrong, standard." Id. at 389, 245 P.3d at 462 (internal quotation marks, brackets, ellipsis points, and citation omitted). Ordinarily, a charge which tracks the language of the statute proscribing the offense is sufficient. See State v. Cordeiro, 99 Hawai'i 390, 406, 56 P.3d 692, 708 (2002); State v. Silva, 67 Haw. 581, 585, 698 P.2d 293, 296 (1985).

As used in ROH § 7-4.2, the terms "owner" and "stray" are statutorily defined in ROH § 7-4.1 (1990 & Supp. No. 19, 7-2011) as follows:

> "Owner" means and includes every person owning, harboring or keeping a dog or having custody thereof.
>
> . . . .
>
> "Stray" or "stray dog" means any dog: (1) on the premises of a person other than the owner of a dog, without the consent of an occupant of such premises; or (2) on a public street, on public or private school grounds, or in any other public place, except when under the control of the owner by leash, cord, chain or other similar means of physical restraint; provided, that such leash, cord, chain or other means is not more than eight feet in length; and provided further, that this provision shall not be construed to permit that which is prohibited by any other law.

The statutory definitions of the terms "owner" and "stray" do not significantly depart from, and are not inconsistent with, the commonly understood meaning of those terms. The dictionary definition of the term "owner" is "one that owns," Webster's Third New International Dictionary 1612 (1986), and the term "own" is defined to include "belonging to oneself . . . possess . . . to have power over: control . . . ." Merriam-Webster's Collegiate Dictionary 829 (10th ed. 2000) (capitalization altered). The term "stray" is defined by

8

dictionary to include "a domestic animal that is wandering at large or is lost." Id. at 1159.

We conclude that the statutory definitions of the terms "owner" and "stray" do not depart from the common understanding of those terms to such an extent that charging Schull in the language of the statute failed to provide him with fair notice of the essential elements of the charge. Schull contends that the charge against him was deficient because certain aspects of the statutory definitions of "owner" and "stray" go beyond the common understanding of the terms. For example, he notes that the statutory definition of "stray" includes a dog on a leash more than eight feet long, and he argues that a person of common understanding would not consider such a dog to be a stray. Schull, however, cannot claim that the charge against him was deficient based on aspects of the statutory definitions that are inapplicable to his case. The charge against Schull was not based on evidence that his dogs became strays because they were on a leash that was too long, but was based on evidence that the dogs were running loose without any leash. Under the common understanding of the terms "owner" and "stray," the use of those terms in the charge against Schull clearly encompassed the conduct of which Schull was accused and gave Schull fair notice of the nature and cause of the accusation against him.

In support of his claim that the charge was insufficient, Schull cites this court's decision in State v. Mita, No. 29347, 2010 WL 617628 (Hawai'i App. Feb. 23, 2010) (summary disposition order), in which this court concluded that the State's failure to include the statutory definition of the term "animal nuisance" in the animal nuisance charge against Mita rendered the charge deficient. However, this court's decision in Mita was subsequently overruled by the Hawai'i Supreme Court in State v. Mita, 124 Hawai'i 385, 245 P.3d 458 (2010).

In concluding that the charge against Mita was sufficient, the Hawai'i Supreme Court distinguished and explained

its prior decision in State v. Wheeler, 121 Hawai'i 383, 219 P.3d 1170 (2009):

> Wheeler does not require that the State provide statutory definitions in every charge which tracks the language of a statute that includes terms defined elsewhere in the code. Requiring the State to do so would render charges unduly complex, in contravention of the policy reflected in HRPP [(Hawai'i Rules of Penal Procedure)] Rule 7(d) that "[t]he charge shall be a plain, concise and definite statement of the essential facts constituting the offense charged." Rather, as this court concluded in Wheeler, the State need only allege the statutory definition of a term when it creates an additional essential element of the offense, and the term itself does not provide a person of common understanding with fair notice of that element.

Mita, 124 Hawai'i at 391-92, 245 P.3d at 464-65 (some brackets in original). Here, the statutory definitions of the terms "owner" and "stray" do not create any additional essential element of the offense, nor do the terms themselves fail to provide fair notice of the required elements. Thus, the State was not required to allege the statutory definitions of the terms "owner" and "stray" in its charge against Schull for the charge to be sufficient.

II.

Schull argues that the District Court erred in denying his motion for judgment of acquittal, because the State failed to present sufficient evidence to prove the charged offense. Schull's argument is premised on his interpretation of the charged violation of ROH § 7-4.2 as requiring proof of a mens rea and action by him to permit a dog to become a stray. Schull suggests that the District Court misconstrued the charged ROH § 7-4.2 offense as not requiring any such proof, which resulted in the District Court's erroneous denial of his motion for judgment of acquittal. Schull asserts that there was no evidence of his state of mind or that he took, or failed to take, any action permitting the dogs to become strays.

Because Schull's insufficiency of evidence claim turns on the proof required to establish the charged violation of ROH § 7-4.2, we begin with an analysis of the proof required for the charge against Schull. Schull was charged with violating ROH

§ 7-4.2, which provides that "[i]t shall be unlawful for the owner of any dog, whether such dog is licensed or not, to permit such dog to become a stray." The charge against Schull notified him that he was subject to sentencing as a second-time offender pursuant to ROH § 7-4.9(a)(2), which provides that the penalty for a second-time offender is a fine of $100.

A.

Under the Hawaii Penal Code, the offense Schull was charged with committing constitutes a violation, and not a crime, because the sentence for the charged offense was limited to a fine. See HRS § 701-107(5) (1993).[5] "When the state of mind required to establish an element of an offense is not specified by the law," HRS § 702-204 (1993)[6] generally requires proof that the defendant acted intentionally, knowingly, or recklessly with respect to the element. However, HRS § 702-212 (1993) provides an exception to the state-of-mind requirement for an offense

_____

[5] HRS § 701-107(5) provides:

> (5) An offense defined by this Code [(Hawaii Penal Code)] or by any other statute of this State constitutes a violation if it is so designated in this Code or in the law defining the offense or if no other sentence than a fine, or fine and forfeiture or other civil penalty, is authorized upon conviction or if it is defined by a statute other than this Code which provides that the offense shall not constitute a crime. A violation does not constitute a crime, and conviction of a violation shall not give rise to any civil disability based on conviction of a criminal offense.

(Emphases added.) Under the Hawaii Penal Code, "unless a different meaning plainly is required," the term "statute" includes "a local law or ordinance of a political subdivision of the State[.]" HRS § 701-118(1) (1993).

[6] HRS § 702-204 (1993) provides:

> **HRS § 702-204 State of mind required.** Except as provided in section 702-212, a person is not guilty of an offense unless the person acted intentionally, knowingly, recklessly, or negligently, as the law specifies, with respect to each element of the offense. When the state of mind required to establish an element of an offense is not specified by the law, that element is established if, with respect thereto, a person acts intentionally, knowingly, or recklessly.

11

which constitutes a violation. HRS § 702-212 provides in relevant part:

> **§ 702-212 When state of mind requirements are inapplicable to violations and to crimes defined by statutes other than this Code.** The state of mind requirements prescribed by sections 702-204 and 702-207 through 702-211 do not apply to:
>
> > (1) An offense which constitutes a violation, unless the state of mind requirement involved is included in the definition of the violation or a legislative purpose to impose such a requirement plainly appears[.]

The commentary to HRS § 702-212 includes an explanation of the rationale behind HRS § 702-212(1):

> This section provides for those instances when the culpability provisions of §§ 702-204 and 207 through 211 are not applicable.
>
> Subsection (1) provides that the requirements of culpability are not generally applicable to violations. (Violations are the lowest grade of penal offenses and for which conviction can only result, according to § 701-107 and Chapter 706 in a fine, forfeiture or other "civil" penalty.) An exception is made in two cases: (1) for violations which by definition require culpable commission; and (2) for violations with respect to which a legislative purpose to impose one or more culpability requirements plainly appears. Subsection (1) applies whether the violation is defined in the Penal Code or in some other Title.
>
> The assumption is that, with respect to violations, if culpable commission is required, the relevant state of mind will be stated in the definition of the violation whether the offense appears in the Penal Code or in some other statute. If the law is silent, the court must make an affirmative determination that the application of state of mind requirements with respect to the violation is within the Legislature's purpose. In the absence of such a determination the liability is absolute or strict.

As noted, the ROH § 7-4.2 offense that Schull was charged with committing constituted a violation because the sentence that could be imposed on Schull as a second-time offender was limited to a fine. ROH § 7-4.2 does not contain a specific state of mind requirement. Thus, absent a plain legislative intent to impose a mens rea requirement, HRS § 702-212(1) establishes that no mens rea was required for Schull's charged offense. Schull does not provide us with, and we are unable to find, any persuasive basis for determining that a

12

legislative purpose to impose a mens rea requirement plainly appears. Accordingly, we conclude that the State was not required to prove a mens rea to establish that Schull committed the charged violation of ROH § 7-4.2.

Schull argues that the State was required to prove a mens rea because a violation of ROH § 7-4.2 as a third-time offender would place a defendant "in jeopardy of imprisonment" pursuant to ROH § 7-4.9(a)(3). However, the charge against Schull did not subject him to imprisonment because as a second-time offender, he could only be sentenced to pay a fine of $100. Because Schull was charged with an offense that constituted a violation, HRS § 707-212(1) controls and the State was not required to prove a mens rea. We do not address the question of whether the State would be required to prove a mens rea where a violation of ROH § 7-4.2 was charged against a defendant subject to sentencing as a third-time offender and thereby exposed to a possible term of imprisonment.

B.

Although the State was not required to prove a mens rea to establish the ROH § 7-4.2 violation charged against Schull, it was still required to prove the elements of the offense. HRS § 702-205 (1993) provides, in relevant part, that "[t]he elements of an offense are such (1) conduct, (2) attendant circumstances, and (3) results of conduct as . . . [a]re specified by the definition of the offense[.]" The elements of ROH § 7-4.2 are: (1) the defendant did permit a dog (conduct); (2) of which the defendant was the owner (attendant circumstance); (3) to become a stray (results of conduct).

Schull argues that the ROH § 7-4.2 offense requires proof that he did permit his dogs to become strays. We agree. A violation of ROH § 7-4.2 is not established simply by proof that the defendant was the owner of a dog that became a stray, but ROH § 7-4.2 additionally requires proof that the defendant *permitted* the dog to become a stray. The term "permit" is defined by dictionary to include "[t]o give opportunity for <lax

13

security permitted the escape>," Black's Law Dictionary 1255 (9th ed. 2009), and "to make possible . . . allow." Merriam-Webster's Collegiate Dictionary 863 (10th ed. 1993). Thus, to establish the conduct element of the offense, the State was required to prove that Schull made it possible for his dogs, allowed his dogs, or gave his dogs the opportunity, to become strays.

This requires more than just evidence that dogs owned by Schull had become strays. For example, a dog owner would not violate ROH § 7-4.2 if unbeknownst to the owner, his or her dog leaves the owner's property and becomes a stray as the result of a burglar cutting a hole in a fence enclosing the property. The dog owner in this situation would not have permitted the dog to become a stray.

In rendering its verdict, the District Court indicated its view that a finding that Schull was the owner of the dogs and that the dogs had become strays was sufficient to establish the charged offense. It appears that the District Court did not also require proof of the conduct element of the offense -- that Schull *did permit the dogs* -- to become strays. Based on our review of the record, we conclude that the District Court's determination that Schull had committed the charged offense was based on an erroneous view of the law. Thus, the District Court's verdict cannot stand.

Schull argues that there was insufficient evidence that he permitted the dogs to become strays. We disagree. When reviewing the sufficiency of the evidence, we must view the evidence in the strongest light for the prosecution. State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998). The State's evidence included Ehlke's testimony that while the dogs were loose on the public road, Schull was waiting at the curb for the dogs to come back to Schull's house and that the dogs eventually returned to Schull's property by way of the back door. We conclude that when viewed in the strongest light for the State, there was sufficient evidence that Schull permitted his dogs to become strays, i.e., that he made it possible for his

14

dogs, allowed his dogs, or gave his dogs the opportunity, to become strays. Therefore, remand for a new trial is warranted.

We vacate the District Court's Judgment because its verdict was based on an erroneous view of the law, and we remand the case for a new trial.

### III.

Schull argues that the District Court abused its discretion in admitting evidence of prior incidents concerning the two dogs involved in this case. Schull contends that the District Court should have excluded the evidence because he offered to stipulate to the identity of the defendant and the dogs and that on the date of the alleged offense, the dogs were running at large off his property. We disagree.

As a general rule, "the prosecution is entitled to prove its case by evidence of its own choice," and the accused "may not stipulate or admit his [or her] way out of the full evidentiary force of the case as the Government chooses to present it." United States v. Sewell, 457 F.3d 841, 844 (8th Cir. 2006) (internal quotation marks and citation omitted)). Schull cites no authority for the proposition that, under the circumstances of this case, the District Court was required to compel the State to accept Schull's offer to stipulate and to preclude the State from introducing evidence of the prior incidents involving Schull and the two dogs. In addition, the evidence of the prior incidents was not only relevant to proving the identity of the dogs and that Schull was the dogs' owner, but to proving that Schull permitted the dogs to become strays on the date of the alleged offense by providing evidence of motive, opportunity, and the absence of mistake or accident. See HRE Rule 404(b) (providing that evidence of other acts is admissible where probative of facts other than criminal propensity that are "of consequence to the determination of the action, such as proof of motive, opportunity, . . . or absence of mistake or accident"). Therefore, the probative value of the prior

15

incidents went beyond the matters to which Schull offered to stipulate.

Moreover, this was a bench trial. "In a bench trial, we presume that the judge was not influenced by incompetent evidence." State v. Lioen, 106 Hawai'i 123, 133, 102 P.3d 367, 377 (App. 2004). Thus, we presume that the District Court confined its consideration of the evidence of the prior incidents only to proper purposes. We conclude that the District Court did not abuse its discretion in allowing the State to present evidence of the prior incidents.

IV.

Schull argues that if ROH § 7-4.2 is construed to mean that for a first- or second-time offender, "[t]he owner of any dog that becomes a stray commits a violation[,]" then the statute would be unconstitutionally overbroad and vague. However, we have not construed ROH § 7-4.2 in this fashion for a first- or second-time offender, but have additionally required proof that the defendant did permit his or her dog to become a stray. Thus, Schull's arguments, which are based on an erroneous premise, are inapposite.

Legislative enactments are presumed constitutional and a party challenging the constitutionality of a legislative enactment has the burden of demonstrating its unconstitutionality beyond a reasonable doubt. See City and County of Honolulu v. Ariyoshi, 67 Haw. 412, 419, 689 P.2d 757, 763 (1984). As in this case, where the freedom of expression is not implicated, a defendant challenging a statute as being unconstitutionally overbroad or vague must show that the statute as applied to him or her is invalid. See State v. Gaylord, 78 Hawai'i 127, 142, 890 P.2d 1167, 1182 (1995); State v. Kuhia, 105 Hawai'i 261, 271, 96 P.3d 590, 600 (App. 2004).

We conclude that under our construction of ROH § 7-4.2 for a first- or second-time offender, the statute is not unconstitutionally overbroad or vague. Based on our construction of ROH § 7-4.2, the State must prove that Schull did permit a dog

16

that he owned to become a stray in order to establish the charged offense. ROH § 7-4.2 is not unconstitutionally vague because it provides people with fair notice of the conduct that is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement. See State v. Pegouskie, 107 Hawai'i 360, 368-69, 113 P.3d 811, 819-20 (App. 2005). Schull provides no basis for this court to conclude that the government may not constitutionally sanction a dog owner for conduct that permits a dog he or she owns to become a stray. We therefore reject Schull's claim that the statute is unconstitutionally overbroad or vague.

CONCLUSION

For the foregoing reasons, we vacate the District Court's Judgment, and we remand the case for a new trial and for further proceedings consistent with this Memorandum Opinion.

DATED: Honolulu, Hawai'i, August 30, 2013.

E. Gunner Schull
(Cades Schutte)
for Defendant-Appellant

Anne K. Clarkin
Deputy Prosecuting Attorney
for Plaintiff-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Associate Judge

17